# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| THE BLACKSTONE HEADWATERS COALITION, INC., <br><br> Plaintiff, <br><br> v. <br><br> GALLO BUILDERS, INC., <br> ARBORETUM VILLAGE, LLC, <br> STEVEN A. GALLO, <br> and ROBERT H. GALLO <br> Defendants. | CIVIL ACTION <br> No. 16-40053-TSH |

## MEMORANDUM AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
**September 30, 2019**

**HILLMAN, DJ.**

Plaintiff, the Blackstone Headwaters Coalition (Blackstone), brings this action under the citizen suit provision of the Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq.* (Clean Water Act, or CWA), alleging that Gallo Builders, Inc, (GBI) and owners Steven A. Gallo and Robert H. Gallo were violating the CWA at a residential construction development site known as Arboretum Village, LLC (the Site) in Worcester, Massachusetts. The only remaining claim, Count I of the Complaint, alleges that GBI, and Steven Gallo and Robert Gallo individually, have been violating the Federal Clean Water Act by operating their residential construction

development at the Site without the required permit.[1] For the reasons set forth below, that motion is **<u>GRANTED</u>**.

## **<u>Background</u>**

The Site consists of approximately 70 acres of land located on the western slope of a hill in southern Worcester, with a small portion of the land located in the Town of Auburn. Through several transactions conducted between 1993 and 2005, companies owned or controlled by the Gallos acquired the Site from a prior developer. The Gallos consolidated ownership of the Site under their company, Fox Hill Builders, Inc. in 2005. In 2007, the parcels owned by Fox Hill Builders, Inc. that comprise the Site were conveyed to Arboretum Village, LLC. As units in the development have been sold, title to the units has been conveyed by Arboretum Village, LLC. to an intermediary that has conveyed to the homeowner. Otherwise, Arboretum Village, LLC remains owner of the Site.

In February of 2006, GBI obtained a Construction General Permit (CGP) for the Site from the United States Environmental Protection Agency (EPA) authorized by the National Pollutant Discharge Elimination System (NPDES).[2] In compliance with the provisions of the Clean Water Act, operators of construction activities (as is defined by the Permit) that "will disturb one or more acres of land, or will disturb less than one acre but are part of a common plan of development … that will disturb more than one acres of land," must obtain a Permit that will authorize them to discharge pollutants in accordance with set limitations and conditions. *See*

---

[1] By Orders dated September 30, 2018 and October 31, 2018, this Court dismissed Count II in its entirety.
[2] Pursuant to 40 C.F.R. § 122.28, the EPA issues NPDES permits to cover certain categories of stormwater dischargers. These permits regulate wastewater discharges by limiting the quantities of pollutants to be discharged and imposing monitoring requirements and other conditions. One such general permit issued by the EPA is the Construction General Permit (CGP). To obtain coverage under this permit, an operator of a construction development must prepare and file a Notice of Intent (NOI) with the EPA. Fourteen days after such filing, unless the EPA notifies the applicant that authorization has been delayed or denied, the applicant is considered covered by the CGP. *See* Construction General Permit, Part 1.4.

2012 Construction General Permit (CGP), https:// www.epa.gov/npdes/epas-2012-construction-general-permit-cgp-and-related-documents. The Notice of Intent (NOI) certifies to the EPA eligibility for coverage according to Part 1.1 and 1.2, and provides information on the construction operation and discharge. GBI received CGP coverage for itself as operator of the Site, under NPDES Permit Tracking No. MAR10C079.

The CGP listed GBI as the operator for the Site until May of 2012. At that time, the EPA revamped the CGP process and permit holders were required to re-apply. GBI elected to allow its CGP to lapse and re-applied for the CGP to be held by Arboretum Village, LLC. The CGP was issued to Arboretum Village, LLC in May of 2012.[3]

The DEP has authority over the Site under the Massachusetts Clean Water Act, Massachusetts Surface Water Quality Standards, and the Massachusetts Wetlands Protection Act. Those statutes, and the corresponding regulations, invest the DEP with enforcement powers, which are specifically administered by the Wetlands Section of the Bureau of Water Resources within the Central Region of the DEP. On June 21, 2013, the DEP issued a Unilateral Administrative Order (UAO) alleging stormwater violations from the Site. The UAO set forth specific facts outlining DEP investigatory measures taken in June of 2013. The UAO further set forth specific obligations required of Arboretum Village, LLC in order to bring the Site into statutory and regulatory compliance. The UAO was appealed by Arboretum Village, LLC to the DEP Division of Appeals and Dispute Resolution. The matter was settled by agreement. Arboretum Village, LLC and the DEP jointly executed an Administrative Consent Order with Penalties on September 5, 2014 and November 4, 2014 respectively (ACOP). On December 22,

---

[3] Due to a scrivener's error, the name on the permit was Arboretum Estate, LLC, which does not exist. Since that time, the CGP has re-issued in the correct name of Arboretum Village, LLC. See NPDES Permit Tracking No. MARC12A693.

2014, the ACOP was approved and published by the DEP. Since 2007, Arboretum Village, LLC and the Gallos have developed the Site and have dealt with MassDEP, the Worcester Conservation Commission, and other municipal permitting authorities.

During all relevant times in this case, Robert H Gallo, his wife Janice Gallo and their son Steven Gallo served as the only officers, directors and shareholders of the family businesses, GBI and Fox Hill Builders and are the only members of Arboretum Village, LLC. Robert and Janice reside together at 31 Gallair Circle, Holden, MA, which is also the principal place of business for all of the entities. Robert Gallo shares executive authority over all of the companies with Defendant Steven Gallo, including authority over erosion control and sediment control decisions and investments at the Site.

## Discussion

Rule 56 of the Federal Rules of Civil Procedure provides that the court shall grant summary judgment if the moving party shows, based on the materials in the record, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A factual dispute precludes summary judgment if it is both "genuine" and "material." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S.Ct. 2505. An issue is "genuine" when the evidence is such that a reasonable factfinder could resolve the point in favor of the nonmoving party. *Morris v. Gov't Dev. Bank of Puerto Rico*, 27 F.3d 746, 748 (1st Cir. 1994). A fact is "material" when it might affect the outcome of the suit under the applicable law. *Id.*

The moving party is responsible for "identifying those portions [of the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986). It can meet its burden either by "offering evidence to

disprove an element of the plaintiff's case or by demonstrating an 'absence of evidence to support the nonmoving party's case.'" *Rakes v. United States*, 352 F. Supp. 2d 47, 52 (D. Mass. 2005), *aff'd*, 442 F.3d 7 (1st Cir. 2006) (quoting *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548). Once the moving party shows the absence of any disputed material fact, the burden shifts to the non-moving party to place at least one material fact into dispute. *Mendes v. Medtronic, Inc.*, 18 F.3d 13, 15 (1st Cir. 1994) (citing *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548). When ruling on a motion for summary judgment, "the court must view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Scanlon v. Dep't of Army*, 277 F.3d 598, 600 (1st Cir. 2002) (internal quotation marks omitted).

The primary goal of the CWA is "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). Citing 40 C.F.R. § 122.41(a), which states that a citizen may sue for *any* violation of an NPDES permit condition (emphasis added), Plaintiff contends that because the regulations state that each operator of a regulated construction site must obtain permit coverage, GBI should have obtained a CGP permit in addition to Arboretum. *See* 2012 CGP Part 1.1.a. An "operator" is defined as either (1) a party with "operational control over construction plans and specifications, including the ability to make modifications to those plans and specifications," or (2) a party with "day-to-day operational control of those activities at a project that are necessary to ensure compliance with the [CGP] conditions." *Id*. Where multiple parties at a development fit this definition of operator, each of them must obtain CGP coverage. *Id*.

The remaining issue in this case is whether the Plaintiff may maintain a citizen suit where a formal CGP issued to Arboretum Village, LLC but not to GBI. Defendants to the case of *Paolino v. JF Realty, LLC*, 830 F. 3d 8, 16-17 (1st Cir. 2016) in support of their motion. Plaintiff

argues that GBI's failure to have a permit for the work at the Arboretum Villages site is not a technical violation. Plaintiff also argues that there is no evidence that GBI is being treated by the permitting authority as the Site's operator and that Defendants cannot show that they are complying with the relevant regulations.

In *Paolino v. JF Realty, LLC*, the First Circuit found that a business's failure to properly transfer Rhode Island Pollution Discharge Elimination System (RIPDES) permit to a new business was not a substantive violation of the (CWA) that could be the basis for a civil enforcement suit by a neighboring property owner. 830 F.3d 8, 16-17 (1st Cir. 2016). The Court reasoned that because the transferor and recipient businesses were controlled by the same person, the identity of current owner of property was known to Rhode Island Department of Environmental Management (RIDEM), and the current owner was complying with relevant regulations. Hence, the name on the permit amounted to no more than an administrative issue.

I will consider the *Paolino* factors as they apply to the facts here. The first was that both entities in question, the prior operator listed on the permit and the current operator that was not, are both owned and controlled by the same person. It is undisputed that both Gallo Builders and Arboretum Village, LLC are both owned and controlled by Robert Gallo and Stephen Gallo.

The second consideration in the *Paolino* court's decision was that the owner was known to the agencies enforcing the conditions of the permit. Plaintiff argues that unlike in *Paolino*, where RIDEM was treating the owner as though it controlled the site — for example, by issuing a violation notice in its name, here MassDEP has not been treating GBI as though it controls the Site. Its enforcement actions have been taken against Arboretum Village, LLC, not GBI. There is voluminous evidence on the record of meetings, correspondence and documents between the Massachusetts DEP and other state and local agencies and the owners Robert Gallo and Steven

Gallo. The identity of the Site's owner was known to the agencies, and pursuant to the third factor considered in *Paolino*, the Gallos appear to the complying with the relevant regulations, whether voluntarily or otherwise, by continuing to operate under the ACOP issued by the DEP in 2014.

The underlying purpose of the NPDES/CGP process is to control sediment, water quality and pollutant discharge at construction sites. This purpose was achieved when a valid permit was issued to Arboretum. Both Arboretum and GBI are owned and controlled by the Gallos, and the Gallos are in regular contact with the state and local agencies that are charged with enforcing the regulations. *See Paolino*, 830 F.3d at 16-17. On these facts, listing Arboretum as the permit holder does not rise to the level of a substantive violation and cannot form the basis of a civil enforcement suit by Blackstone.

## Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment with Respect to Count One of the Complaint (Docket No. 101) is **GRANTED**. Defendants' Motion to Stay Discovery (Docket No. 99) and Plaintiff's Motion to Compel (Docket No. 103) are both **DENIED** as moot.

**SO ORDERED.**

>   /s/ *Timothy S. Hillman*
>   **TIMOTHY S. HILLMAN**
>   **UNITED STATES DISTRICT JUDGE**