# United States Court of Appeals
## For the First Circuit

No. 19-2095

THE BLACKSTONE HEADWATERS COALITION, INC.,

Plaintiff, Appellant,

v.

GALLO BUILDERS, INC.; ARBORETUM VILLAGE, LLC;
STEVEN A. GALLO; and ROBERT H. GALLO,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Timothy S. Hillman, U.S. District Judge]

Before

Barron, Chief Judge,
Lynch, Howard, Thompson, Kayatta, Gelpí, Circuit Judges.

James P. Vander Salm and Law Office of James P. Vander Salm
on brief for appellant.
William D. Jalkut and Fletcher Tilton PC on brief for
appellees.
Todd Kim, Assistant Attorney General, Environment and Natural
Resources Division, United States Department of Justice, Jennifer
S. Neumann, Attorney, Environment and Natural Resources Division,
United States Department of Justice, and Matthew R. Oakes,
Attorney, Environment and Natural Resources Division, United
States Department of Justice, and Krista Hughes, Attorney, Office
of General Counsel, United States Environmental Protection Agency,
on brief for the United States, amicus curiae.
Maura Healey, Attorney General for the Commonwealth of
Massachusetts, Seth Schofield, Senior Appellate Counsel, Energy

and Environment Bureau, Office of the Attorney General of Massachusetts, Nora J. Chorover, Assistant Attorney General, Environmental Protection Division, Office of the Attorney General of Massachusetts, and Emily K. Mitchell, Assistant Attorney General, Environmental Protection Division, Office of the Attorney General of Massachusetts, on brief for the Commonwealth of Massachusetts, amicus curiae.

Charles C. Caldart and Matthew J. Donohue on brief for National Environmental Law Center, amicus curiae.

---

Opinion En Banc

---

April 28, 2022

---

BARRON, **Chief Judge**. Section 1319(g)(6)(A) of Title 33 of the United States Code places a limitation on citizen suits that are brought to enforce the Federal Water Pollution Control Act, better known as the Clean Water Act, 33 U.S.C. § 1251 et seq. ("CWA"). The question that we confront here concerns whether that limitation precludes not only a citizen suit that seeks to apply a "civil penalty" to a defendant for an ongoing violation of the CWA but also one that seeks to obtain declaratory or prospective injunctive relief from such a violation.

A panel of this court held in North and South Rivers Watershed Ass'n v. Town of Scituate, 949 F.2d 552, 557-58 (1st Cir. 1991), that the limitation on citizen suits that § 1319(g)(6)(A) establishes does have that broad reach. A panel of this court then relied on that holding in this case in affirming the grant of summary judgment against Blackstone Headwaters Coalition ("Blackstone"), a Massachusetts-based, non-profit environmental organization whose mission "is to restore and protect water quality and wildlife habitat in the Blackstone River," in its CWA citizen suit against various defendants involved in the development of a construction site in Worcester, Massachusetts. See Blackstone Headwaters Coal., Inc. v. Gallo Builders, Inc., 995 F.3d 274, 293 (1st Cir.), vacated, 15 F.4th 1179 (1st Cir. 2021).

- 3 -

Blackstone thereafter requested that we reconsider our decision in Scituate en banc, and we granted the petition and vacated the panel opinion in this case. See Blackstone Headwaters, 15 F.4th 1179. Having now carefully reconsidered our ruling in Scituate, we hold that it construed the scope of § 1319(g)(6)(A)'s limitation on citizen suits too broadly. We thus now hold that, contrary to Scituate, the limitation set forth in § 1319(g)(6)(A) bars only a citizen suit that seeks to apply a civil penalty for an ongoing violation of the CWA and not a citizen suit for declaratory and prospective injunctive relief to redress an ongoing violation of the CWA. Accordingly, we reverse in part the grant of summary judgment against Blackstone as to Count II of its complaint.

In addition, for reasons that we set forth in our now-vacated panel opinion in this case, we affirm the grant of summary judgment to the defendants as to Count II of Blackstone's complaint insofar as the grant of summary judgment pertains to Blackstone's request for a civil penalty to be applied to the defendants. See Blackstone Headwaters, 995 F.3d at 292-93. Finally, for reasons that we also set forth in the now-vacated panel opinion in this case, we reverse the grant of summary judgment as to Count I of Blackstone's complaint. See id. at 293-94.

- 4 -

**I.**

We refer the reader to the now-vacated panel opinion for a detailed recounting of the events that precipitated Blackstone's suit and the procedural history that led to the appeal from the summary judgment rulings below. Id. at 278-81. We refer the reader as well to that now-vacated panel opinion for the reasoning, which we hereby adopt as our own, explaining why the grant of summary judgment to the defendants as to Count I must be reversed. Id. at 293-94.

Our focus in what follows is solely on Count II of Blackstone's complaint. Moreover, our particular focus as to that count of Blackstone's complaint is on the questions that implicate our ruling in Scituate with respect to the scope of § 1319(g)(6)(A)'s limitation on CWA citizen suits. To set the stage for our analysis of those questions, therefore, we need only provide the relatively brief factual and legal background that is set forth below.

In June 2013, the Massachusetts Department of Environmental Protection ("MassDEP") issued a Unilateral Administrative Order ("UAO") to Arboretum Village, LLC, which was involved in the development of the Worcester site. The UAO alleged that Arboretum Village had violated the Massachusetts Clean Water Act ("MCWA"), see Mass. Gen. Laws ch. 131, § 40, by allowing "[d]ischarge of silt-laden runoff . . . from unstable, eroded

- 5 -

suspended soils at" the Worcester site to flow into "an unnamed perennial stream, an intermittent stream . . . and the Blackstone River." The UAO culminated in a settlement between the MassDEP and Arboretum Village

> in the form of an Administrative Consent Order with Penalty ("ACOP"). . . . [U]nder the ACOP, Arboretum Village [was] required, among other things, to "pay an $8,000.00 civil administrative penalty to the Commonwealth," to undertake certain remedial measures at the site, and to agree to "pay stipulated penalties and/or be subject to additional high level enforcement action from the [MassDEP] if any further discharges of turbid stormwater runoff to wetlands resource areas in excess of 150 [nephelometric turbidity units] occur."

Blackstone Headwaters, 995 F.3d at 279 (third alteration in original).[1]

Almost three years later, on May 6, 2016, Blackstone filed this suit in the United States District Court for the District of Massachusetts. Blackstone's complaint sets forth two counts. Count I alleges that Gallo Builders, Robert Gallo, and Steven Gallo violated 33 U.S.C. §§ 1311(a), 1342, and accompanying regulations, 40 C.F.R. §§ 122.26(b)(14)(x), 122.28, by failing to obtain a Construction General Permit for Gallo Builders from the Environmental Protection Agency ("EPA") for the Worcester site. Count II alleges the violation of 33 U.S.C. §§ 1311(a), (e),

---

[1] A nephelometric turbidity unit is a "measure of water turbidity taken with an instrument that gauges the reflectivity of light off water." Blackstone Headwaters, 995 F.3d at 278 n.3.

- 6 -

1365(f)(1), (7), and 1342 by Arboretum Village, Gallo Builders, Robert Gallo, and Steven Gallo in consequence of their failure to comply with provisions of the Construction General Permit that Arboretum Village had obtained from the EPA due to "longstanding and habitual neglect of erosion and sediment control" at the same site.  The complaint seeks both declaratory and injunctive relief, as well as the application of civil penalties against the defendants.

Blackstone brought the suit pursuant to 33 U.S.C. § 1365(a)(1).  See generally Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc., 528 U.S. 167, 181 (2000) ("An association has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.").  That provision authorizes "any citizen" to "commence a civil action on his own behalf" against "any person . . . who is alleged to be in violation of . . . an effluent standard or limitation under" the CWA.  33 U.S.C. § 1365(a)(1).

Section 1365(a)(1) provides, however, that such a citizen suit may not be brought under circumstances that are set forth in "subsection (b) of this section and section 1319(g)(6) of this title."  The dispute at hand does not implicate "subsection

- 7 -

(b)," or, as that provision is otherwise known, 33 U.S.C.
§ 1365(b).  But, the dispute at hand does implicate "section
1319(g)(6) of this title," or, at least a portion of it -- namely,
§ 1319(g)(6)(A).

Section 1319(g)(6)(A) is headed, "Limitation on actions
under other sections."  It provides as follows:

> Action taken by the Administrator or the
> Secretary, as the case may be, under this
> subsection shall not affect or limit the
> Administrator's or Secretary's authority to
> enforce any provision of this chapter; except
> that any violation --
>
>> (i) with respect to which the
>> Administrator or the Secretary has
>> commenced and is diligently prosecuting
>> an action under this subsection,
>>
>> (ii) with respect to which a State has
>> commenced and is diligently prosecuting
>> an action under a State law comparable to
>> this subsection, or
>>
>> (iii) for which the Administrator, the
>> Secretary, or the State has issued a
>> final order not subject to further
>> judicial review and the violator has paid
>> a penalty assessed under this subsection,
>> or such comparable State law, as the case
>> may be,
>
> shall not be the subject of a civil penalty
> action under subsection(d) of this section or
> section 1321(b) of this title or section 1365
> of this title.

33 U.S.C. § 1319(g)(6)(A) (emphasis added).

- 8 -

In light of the reference to "a civil penalty action" in § 1319(g)(6)(A), it is notable that the Administrator of the EPA is not the only party that the CWA authorizes to bring a suit to have a court apply a civil penalty for a violation of that statute. See 33 U.S.C. § 1319(d).  For, § 1365(a) also provides that a court may "apply any appropriate civil penalties under section 1319(d)" of the CWA in a citizen suit that is brought under that statute.

The amount of any civil penalties that a court may apply in such a citizen suit depends on several factors that are listed in 33 U.S.C. § 1319(d).  They include "the seriousness of the violation or violations, the economic benefit (if any) resulting from the violation, any history of such violations, any good-faith efforts to comply with the applicable requirements, the economic impact of the penalty on the violator, and such other matters as justice may require."  Id.; see generally Catskill Mountains Chapter of Trout Unlimited, Inc. v. City of New York, 244 F. Supp. 2d 41, 48-54 (N.D.N.Y. 2003).  A "civil penalty" may not, however, in any case "exceed $25,000 per day for each violation."  33 U.S.C. § 1319(d).

In moving for summary judgment on Count II of Blackstone's complaint, the defendants named in that count contended that, with respect to the limitation on § 1365(a)(1) citizen suits that § 1319(g)(6)(A) sets forth, the MassDEP's enforcement action constituted a "diligent prosecution" under a

- 9 -

state law "comparable" to the CWA for the "same violations" alleged by Count II.  Blackstone argued that the MassDEP's enforcement action did not constitute a "diligent prosecution" and did not arise under a state law "comparable" to the CWA.

In an earlier filing, Blackstone also contended that the limitation on citizen suits that § 1319(g)(6)(A) sets forth could not stand in the way of Blackstone's request for either declaratory or prospective injunctive relief -- even if that same limitation otherwise would apply to its citizen suit and so would bar its request to apply civil penalties to the defendants.  Blackstone contended that was so because the limitation on citizen suits that § 1319(g)(6)(A) sets forth simply does not reach a citizen suit to the extent that it seeks such declaratory or injunctive relief. Blackstone acknowledged, however, that the District Court was bound by Scituate to reject this latter contention.

The District Court granted summary judgment to the defendants named in Count II of Blackstone's complaint with respect to all the relief that Blackstone had requested in that count. Blackstone Headwaters Coal., Inc. v. Gallo Builders, Inc., No. 4:16-cv-40053, 2018 WL 4696749, at *2 (D. Mass. Sept. 30, 2018). The District Court did so on the ground that § 1319(g)(6)(A) precluded Blackstone's CWA claim in this count from proceeding -- again, with respect to all the relief that Blackstone had requested -- because the record indisputably showed

- 10 -

that the MassDEP was "diligent[ly] prosecut[ing]" an "enforcement action" for "the [same] violation" alleged in Count II under a state law that is "comparable to" the CWA. Id. at *1-2 (quoting 33 U.S.C. § 1319(g)(6)(A)(ii)).[2]

The defendants named in Count I of Blackstone's complaint moved for summary judgment on that count. Those defendants did so, however, on grounds that did not implicate the limitation on citizen suits that § 1319(g)(6)(A) sets forth. Here, too, the District Court ruled in favor of the defendants. The District Court did so on the ground that Blackstone failed to allege in Count I of its complaint an actionable violation of the CWA. See Blackstone Headwaters Coal., Inc. v. Gallo Builders, Inc., 410 F. Supp. 3d 299, 303 (D. Mass. 2019).

Blackstone thereafter appealed. As to the District Court's grant of summary judgment to the defendants named in Count II of Blackstone's complaint on that count, Blackstone argued to the panel that the ruling below must be reversed in full because that count did not allege the same violation of a comparable law

_____

[2] We note that the District Court's initial order granting summary judgment to the defendants did not address whether the MassDEP's "diligent prosecution" of Arboretum Village arose under a state law that was "comparable" to the CWA, namely the MCWA. The District Court issued an order subsequent to its grant of summary judgment to the defendants which clarified that the MassDEP did in fact diligently prosecute Arboretum Village under a state law that is comparable to the CWA. See Blackstone Headwaters Coal., Inc. v. Gallo Builders, Inc., No. 4:16-cv-40053, 2018 WL 5795832, at *1 (D. Mass. Oct. 31, 2018).

- 11 -

that the MassDEP had diligently prosecuted. But, in addition, Blackstone argued that, even if that count did so allege, the limitation on citizen suits in § 1319(g)(6)(A) does not reach Blackstone's request for either declaratory or prospective injunctive relief, because that limitation applies only to a citizen suit to apply a civil penalty. Thus, Blackstone argued on that basis that, at the very least, the grant of summary judgment as to Count II must be reversed with respect to the availability of either declaratory or prospective injunctive relief.

The panel affirmed the grant of summary judgment to the defendants named in Count II as to all the relief that Blackstone had sought in that count based on the limitation on citizen suits that is set forth in § 1319(g)(6)(A). See Blackstone Headwaters, 995 F.3d at 293. In doing so, the panel rejected -- under the law-of-the-circuit doctrine -- Blackstone's argument that § 1319(g)(6)(A)'s limitation on citizen suits has no application to a citizen suit for declaratory and injunctive relief and instead reaches only a citizen suit to apply a civil penalty. See id.

Blackstone thereafter petitioned this Court for rehearing en banc. It did so on the ground that Scituate was decided incorrectly and should be overruled and that, in consequence, the grant of summary judgment to the defendants named in Count II of Blackstone's complaint on that count must be reversed in substantial part. Blackstone noted in its petition

- 12 -

that the Tenth Circuit had ruled after <u>Scituate</u> that § 1319(g)(6)(A) does not apply to a citizen suit that seeks declaratory or prospective injunctive relief for an ongoing violation of the CWA and instead applies only to a citizen suit that seeks to apply a civil penalty. See <u>Paper, Allied-Indus., Chem. & Energy Workers Int'l Union</u> v. <u>Cont'l Carbon Co.</u>, 428 F.3d 1285, 1300 (10th Cir. 2005).[3]

We issued an order that requested that the defendants named in the two counts of Blackstone's complaint respond to Blackstone's petition. Shortly thereafter, we invited the United States to offer its views as to whether § 1319(g)(6)(A) applies to a citizen suit that seeks declaratory or injunctive relief. The United States filed an amicus brief in support of Blackstone's petition that contended that <u>Scituate</u> was decided incorrectly and that § 1319(g)(6)(A) does not apply to a citizen suit that seeks declaratory and prospective injunctive relief for an ongoing violation of the CWA.

We granted Blackstone's petition for rehearing en banc, vacated the panel opinion, and invited the parties to submit supplemental briefing concerning the scope of § 1319(g)(6)(A)'s limitation on citizen suits. We received supplemental briefing

---

[3] Blackstone asserted in its petition in a footnote that, in the event the petition were granted, it also would seek the en banc court's reconsideration of whether § 1319(g)(6)(A)(ii) applies to its request to apply civil penalties to the defendants.

- 13 -

from the parties as well as briefs from amici, including the United States and the Commonwealth of Massachusetts.

## II.

Blackstone concedes that § 1319(g)(6)(A) precludes a citizen suit that seeks to apply a "civil penalty" for a CWA violation when the prerequisites for triggering that limitation on such a suit are satisfied. Blackstone contends, however, that the limitation has no application to a citizen suit for prospective injunctive and declaratory relief to redress an ongoing violation of the CWA and that Scituate erred in holding otherwise. Blackstone argues that this is so because a citizen suit for such relief is not a "civil penalty action" within the meaning of § 1319(g)(6)(A). Reviewing this question of statutory interpretation de novo, see Atlantic Fish Spotters Ass'n v. Daley, 205 F.3d 488, 490 (1st Cir. 2000), we agree with Blackstone.

## A.

The relevant portion of § 1319(g)(6)(A) describes the limitation on citizen suits that the provision establishes as a limitation that applies solely to a "civil penalty action." The standard legal definition of a "penalty" at the time of the passage of § 1319(g)(6)(A) was: "a sum of money which the law exacts payment of by way of punishment for doing some act which is prohibited or for not doing some act which is required to be done." Penalty, Black's Law Dictionary (5th ed. 1979); cf. Penalty,

- 14 -

Black's Law Dictionary (11th ed. 2019) (defining "penalty" as a "fine assessed for a violation of a statute or regulation"). The word "penalty" was thus defined at that time in terms that would not appear to encompass the kind of relief that a prospective injunction or a declaratory judgment provides. Moreover, the Supreme Court of the United States has long recognized a distinction between civil penalties and equitable remedies, such as declaratory and injunctive relief. See Tull v. United States, 481 U.S. 412, 422 (1987) (construing 33 U.S.C. § 1319(d), which authorizes the levying of civil penalties in a judicial action brought by the EPA, as permitting "[r]emedies intended to punish culpable individuals, as opposed to those intended simply to extract compensation or restore the status quo, [that] were issued by courts of law, not courts of equity"); see also AMG Cap. Mgmt., LLC v. FTC, 141 S. Ct. 1341, 1347 (2021) (noting that "[a]n 'injunction' is not the same as an award of equitable monetary relief").

Thus, it is not evident how the words "civil penalty action" in § 1319(g)(6)(A) -- at least when viewed in isolation -- may be squared with Scituate's conclusion that those words refer to an "action" that is for prospective injunctive or declaratory relief for an ongoing violation of the CWA. Neither type of relief would appear to qualify as a "civil penalty." We note, too, that the words "civil penalty" in the phrase "civil

- 15 -

penalty action" in § 1319(g)(6)(A) appear to serve no function other than to narrow the range of citizen suits -- and thus "action[s]" -- that the provision precludes. See Duncan v. Walker, 533 U.S. 167, 175 (2001) (noting that courts have a "duty to 'give each word [of a statutory provision] some operative effect' where possible" (quoting Walters v. Metro. Ed. Enters., Inc., 519 U.S. 202, 209 (1997))).

Of course, we must consider the phrase "civil penalty action" in § 1319(g)(6)(A) in the context of the statute as a whole and not in isolation. See Goncalves v. Reno, 144 F.3d 110, 127 (1st Cir. 1998) (citing Robinson v. Shell Oil Co., 519 U.S. 337, 341 (1997)). But, the use of that wider lens does not change the picture.

Section 1319(b) authorizes the EPA to "commence a civil action for appropriate relief, including a permanent or temporary injunction." Section 1319(d) then separately authorizes a court to impose "civil penalties" in an action brought by the EPA. In addition, § 1319(g)(6)(A) makes plain that if one of the conditions set forth in subsections (i)-(iii) of that provision is met, the EPA is precluded from initiating a "civil penalty action" under § 1319(d). Notably, though, while § 1319(g)(6)(A) makes express reference to the preclusion of a "civil penalty action" by the EPA, that provision does not make any reference to § 1319(b).

- 16 -

It is apparent, therefore, that, at least with respect to the Administrator of the EPA's enforcement authority, § 1319(g)(6)(A) treats an "action" to assess a "civil penalty" as an "action" that is distinct from a "civil action" that seeks an "injunction." The "authority" to enforce the substantive provisions of the CWA to which § 1319(g)(6)(A) refers includes, after all, the "authority" of the Administrator of the EPA to "commence a civil action" for "a permanent or temporary injunction." See 33 U.S.C. § 1319(b). That being so, it is hard to see how, textually, a "civil penalty action" in § 1319(g)(6)(A) may be read to refer to an "action" for prospective injunctive relief when the "action" is brought as a citizen suit under § 1365(a)(1). Cf. Ratzlaf v. United States, 510 U.S. 135, 143 (1994) ("A term appearing in several places in a statutory text is generally read the same way each time it appears.").

Similarly, § 1319(g)(6)(B) provides that "[t]he limitations contained in [§ 1319(g)(6)(A)] on civil penalty actions under [§] 1365 shall not apply" in certain specified circumstances that are not relevant here. That is significant for present purposes because Congress's use of the words "on civil penalty actions under [§] 1365" in § 1319(g)(6)(B) is most strange if the phrase "civil penalty actions" were intended to refer to all actions under § 1365. If Congress meant to convey that

- 17 -

meaning, why did Congress not just say, "on actions under [§] 1365"?

Indeed, § 1365 itself underscores the distinction that the text indicates is being drawn in the CWA between a "civil action" and a "civil penalty action" in the CWA. For, while § 1365 addresses any "action" that may be brought as a "citizen suit," § 1365(a)(1) then refers to a limitation that is set forth in § 1319(g)(6)(A), which by its own terms applies only to a "civil penalty action."

Insofar as the legislative history might be thought to be of any relevance here, it does not suggest a different understanding of the limitation on citizen suits that is at issue. But cf. Milner v. Dep't of Navy, 562 U.S. 562, 572 (2011) ("We will not take the opposite tack of allowing ambiguous legislative history to muddy clear statutory language."). It shows that the House in the 99th Congress proposed text that would have amended § 1365(b) to include, as an additional basis for precluding a § 1365(a) citizen suit, "the Administrator or [a] State['s] . . . commence[ment] and . . . diligent[] pursui[t] . . . of a civil penalty under [33 U.S.C. § 1319(g)]," Water Quality Renewal Act of 1985, H.R. 8, 99th Cong. § 24(b) (1985); see also H.R. Rep. No. 99-1004, at 136 (noting that the proposed limitation would have provided "that no action can be commenced by a citizen" if the Administrator or a State was pursuing an action for the same

- 18 -

violation). But, the Senate, in that same Congress, proposed text for a limitation on citizen suits that referred to a "civil penalty action" to address "[t]he potential for overlap between citizen enforcement and administrative penalties." S. Rep. No. 99-50, at 28 (1985). The Senate Report further explained that the resulting limitation on "civil penalty action[s]" "would not apply to . . . an action seeking relief other than civil penalties (e.g., an injunction or declaratory judgment)." Id. Thus, it is significant that the 100th Congress in enacting the limitation at issue included the Senate's "civil penalty action" language rather than the language from the House's earlier proposed amendment. Compare Clean Water Act Amendments of 1985, S. 1128, 99th Cong. § 109(d) (1985) ("[A]ny violation with respect to which the Administrator has commenced and is diligently prosecuting an action . . . shall not be the subject of a civilian penalty action under section . . . [1365] of this Act."); with 33 U.S.C. § 1319(g)(6)(A).

**B.**

Scituate does not take direct issue with any of the textual analysis of § 1319 that we have set forth above. Indeed, Scituate acknowledges that if the phrase "civil penalty action" as used in § 1319(g)(6)(A) were read "literal[ly]," then it would exclude from the scope of the limitation on citizen suits that § 1319(g)(6)(A) sets forth an action for declaratory or prospective injunctive relief for an ongoing CWA violation. See

- 19 -

Scituate, 949 F.2d at 558. Scituate also does not refer to the legislative history that we have just reviewed. Nonetheless, Scituate rejects what it terms a "literal" reading of the statutory text. It does so "[b]ased on both the policy considerations regarding civil actions under [§ 1365] emphasized by both the Supreme Court and Congress and the fact that [§ 1365] fails to differentiate civilian penalty actions from other forms of civilian relief." Id. at 557.

Scituate notes in doing so that § 1365 "does not differentiate civilian penalty actions from other civilian actions, such as those seeking injunctive relief" and instead "simply provides civilians with a general grant of jurisdiction for all remedies available." Id. at 557-58. Scituate adds that while "civilian penalty actions are not set forth separately in [§ 1365,] . . . they are in the sections of the [CWA] detailing governmental enforcement actions." Id. at 558. Scituate then concludes based on these observations that "[t]his distinction suggests to us a common base supporting the entire scope of civilian enforcement actions brought under [§ 1365]." Id.

With that construction of the scope of § 1365(a) in place, Scituate proceeds to emphasize that the Supreme Court, in describing the scope of § 1365's authorization of citizen suits in Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc., 484 U.S. 49 (1987), noted the "commonality" between actions to

- 20 -

apply civil penalties and actions to obtain other types of relief.

See Scituate, 949 F.2d at 558 ("The citizen suit provision suggests a connection between injunctive relief and civil penalties that is noticeably absent from the provision authorizing agency enforcement." (quoting Gwaltney, 484 U.S. at 58)). And, Scituate reasons from there that

> [T]he statutory language suggesting a link between civilian penalty and injunctive actions, considered in light of the Gwaltney opinion's language outlining the supplemental role that the citizen's suit is intended to play in enforcement actions, leads us to believe that the [§ 1319(g)(6)(A)] bar extends to all citizen actions brought under [§ 1365(a)], not merely civil penalties.

Id.

In so concluding, Scituate deems it significant that "[b]oth . . . Congress and the Supreme Court have recognized . . . that the primary responsibility for enforcement of [the CWA] rests with the government," that citizen suits are "intended to supplement rather than supplant this primary responsibility," and "that citizen suits are only proper if the government fails to exercise its enforcement responsibility." Id. Scituate thus concludes that it is "inconceivable" that Congress would have intended for the bar in § 1319(g)(6)(A) to apply only to a "civil penalty action" because "if the limitation of civilian suits is to have any beneficial effect on enforcement of clean water legislation, the [bar] must cover all civil actions." Id. And

- 21 -

so, Scituate holds, after invoking the absurdity canon, see Green v. Bock Laundry Mach. Co., 490 U.S. 504, 527 (1989) (Scalia, J., concurring), that § 1319(g)(6)(A) could not be read literally insofar as the "literal" meaning of "civil penalty action" in § 1319(g)(6)(A) is at odds with a construction of that provision that would bar actions for injunctive or declaratory relief. For, according to Scituate, "it would be absurd" to construe § 1319(g)(6)(A) in a manner that "would lead to deferring to the primary enforcement responsibility of the government only where a penalty is sought in a civilian action, as if the policy considerations limiting civilian suits were only applicable within that context." 949 F.2d at 558.

We need not decide whether there might be a case in which the absurdity canon could be applied in the face of statutory text and legislative history as seemingly clear in yielding a statute's meaning as the text and legislative history here. For, even if such a case might exist, this case is not that case.

It would not be absurd to construe § 1319(g)(6)(A) to permit citizen suits for declaratory and prospective injunctive relief when no governmental enforcement action in court is underway. "Citizen suits are," as a general matter, "an important supplement to government enforcement of the Clean Water Act, given that the government has only limited resources to bring its own enforcement actions." Atl. States Legal Found., Inc. v. Tyson

- 22 -

Foods, Inc., 897 F.2d 1128, 1136 (11th Cir. 1990). And, allowing those suits to proceed even when the government has undertaken administrative enforcement action is itself hardly absurd, given that "[a] court which entertains a citizen action for injunctive relief can manage the action so as to ensure that the diligently pursued State enforcement action will dominate and that the [defendant] will not be whipsawed by multiple actions." Coal. for a Liveable W. Side, Inc. v. N.Y.C. Dep't of Env't Prot., 830 F. Supp. 194, 197 (S.D.N.Y. 1993); see, e.g., Sierra Club v. City of Colo. Springs, No. 05-cv-01994, 2009 WL 2588696, at *17 (D. Colo. Aug. 20, 2009) (declining to order permanent injunctive relief in a § 1365 suit where the defendant made a showing that it was complying with orders issued as a result of a state administrative enforcement action and that the defendant's compliance had yielded improvement in the environmental conditions of concern).

Nor is it absurd for Congress to have established what the Tenth Circuit in rejecting Scituate's construction of § 1319(g)(6)(A) described as a "two-tiered claim preclusion scheme," Allied-Indus., 428 F.3d at 1298, under which "[t]he broadest preclusion exists when a state commences and diligently prosecutes a court action to enforce [CWA] standard[s]" and a "narrower preclusion exists when the state does something less than judicial enforcement," id. (citing the provision in 33 U.S.C. § 1365(b)(1)(B) that applies when a state has pursued a judicial

- 23 -

action). That framework ensures that citizen suits are precluded regardless of the relief sought only when the government seeks judicial enforcement rather than administrative action.

True, the Eighth Circuit came to the same outcome as Scituate, and it did so after Scituate was on the books. See Ark. Wildlife Fed'n v. ICI Americas, Inc., 29 F.3d 376, 377 (8th Cir. 1994). But, the Eighth Circuit did not suggest in reaching that outcome that the text of § 1319(g)(6)(A) provided any support for construing that provision to apply to actions that are not for a "civil penalty." In addition, the Eighth Circuit did not hold that such a seemingly atextual construction of that provision was justified by the absurdity canon. Id. at 383. Indeed, it expressly disavowed reliance on that canon. Id. It thus concluded only that a reading that would follow the text and the legislative history would be "unreasonable," given the policy consequences of it. See id.

But, as we have seen, Scituate did not itself reach its conclusion on such a basis, because it did invoke the absurdity canon. Nor do we see how we may endorse the Eighth Circuit's reasoning, because, for reasons like those we relied on in rejecting the application of the absurdity canon here to reach the result that Scituate reached, we do not see how it is "unreasonable" for Congress to have made the choice that all the signs that we are supposed to go by indicate that it made.

- 24 -

Finally, nothing in Gwaltney provides support for Scituate's decision to construe the phrase "civil penalty action" in § 1319(g)(6)(A) to mean, in effect "any action." Gwaltney did not determine the scope of the actions that are subject to § 1319(g)(6)(A)'s bar. It thus did not purport to hold that those actions include even ones that are not "civil penalty action[s]." It determined instead only the scope of the violations for which citizen suits under § 1365 may be brought, as it held that such violations had to be ongoing ones and could not be for "wholly past" violations. See 484 U.S. at 67; see also Allied-Indus., 428 F.3d at 1299.[4]

---

[4] The defendants do separately contend that, per Crowe v. Bolduc, 365 F.3d 86 (1st Cir. 2004), we should exercise our discretion to apply our ruling that § 1319(g)(6)(A) does not bar a citizen suit for declaratory or injunctive relief to this case only prospectively, given that it results in our overturning this Circuit's prior construction of that provision. But, Crowe concerned a change in our precedent that shortened the time for making a filing to recoup money owed. Id. at 94-95. Thus, the application of that change in our precedent to the parties in the pending case would have rendered the filing that had been made in that case to secure those funds untimely, even though that filing had been made in reliance on our prior precedent. Id. Here, by contrast, the change in our precedent affects only the forms of relief that will be available to the plaintiff against the defendants to redress prospectively any of their ongoing statutory violations. That is significant because, as the defendants acknowledge, our rulings presumptively apply to pending cases, see James B. Beam Distilling Co. v. Georgia, 501 U.S. 529, 534-35 (1991), and we see no basis for -- and the defendants identify no authority supporting -- our departing from that ordinary approach here, given that our application of our decision overruling Scituate to this pending case affects only how the plaintiff may redress on a prospective basis any ongoing violation of law by the defendants.

That conclusion provides no support for a construction of "civil penalty action" that would encompass an action that is not for a "civil penalty." In fact, if anything, Gwaltney supports the opposite conclusion, because it treats § 1319(d)'s use of the term "civil penalties" as if it does not refer to prospective injunctive or declaratory relief. See 484 U.S. at 58 (citing Tull, 481 U.S. at 425). In other words, Gwaltney appears to acknowledge that an "action" for a "civil penalty" -- or, otherwise put, "a civil penalty action" -- is not an action for declaratory or prospective injunctive relief from an ongoing CWA violation.

### c.

For the reasons set forth above, we must reverse the grant of summary judgment to the defendants on Count II of Blackstone's complaint, insofar as that grant of summary judgment pertains to Blackstone's request for declaratory and injunctive relief. We see no basis, however, for overturning the grant of summary judgment to the defendants on Count II of Blackstone's complaint with respect to Blackstone's request to apply a "civil penalty" to them. And that is so because we agree with -- and hereby incorporate as our own -- the reasoning that is set forth in the now-vacated panel opinion in this case that addresses that aspect of the District Court's ruling granting summary judgment on that count of Blackstone's complaint. See Blackstone Headwaters, 995 F.3d at 281-92.

- 26 -

## III.

We **reverse** the District Court's grant of summary judgment to the defendants named in Count II of Blackstone's complaint as to Blackstone's request for declaratory and injunctive relief on that count; **affirm** the District Court's grant of summary judgment to the defendants named in Count II of Blackstone's complaint as to Blackstone's request to apply civil penalties to the defendants on that count; and **reverse** the District Court's grant of summary judgment to the defendants named in Count I of Blackstone's complaint as to that count. The parties shall bear their own costs.