IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

THE BLACKSTONE HEADWATERS COALITION, INC.,

Plaintiff,

v.

GALLO BUILDERS, INC.,
R.H. GALLO BUILDERS, INC.,
ARBORETUM VILLAGE, LLC,
STEVEN A. GALLO,
and ROBERT H. GALLO,

Defendants.

CIVIL ACTION NO.
4:16-cv-40053-MRG

**CONSENT DECREE**

WHEREAS, plaintiff The Blackstone Headwaters Coalition, Inc. is a non-profit organization working to prevent the pollution of the Blackstone River and its headwaters, and is sometimes referred to herein as the "Plaintiff";

WHEREAS, defendant R.H. Gallo Builders, Inc. is a company constructing a residential housing development known as "Arboretum Village Estates" or "Arboretum Village" in Worcester, Massachusetts (the "Site");

WHEREAS, defendant Gallo Builders, Inc. is a company formerly involved at the Site but was dissolved by the Massachusetts Secretary of State's Office on or about September 3, 2020;

WHEREAS, defendant Arboretum Village, LLC is a company that owns undeveloped land at the Site;



RHG
SAG

WHEREAS, defendant Robert H. Gallo is or was an officer of defendants R.H. Gallo Builders, Inc. and Gallo Builders, Inc., and is the Manager of Arboretum Village, LLC;

WHEREAS, defendant Steven A. Gallo is or was an officer of defendants R.H. Gallo Builders, Inc. and Gallo Builders, Inc., and is a Member of Arboretum Village, LLC;

WHEREAS, defendant Robert H. Gallo, defendant Steven A. Gallo, defendant Arboretum Village, LLC, defendant Gallo Builders, Inc., and defendant R.H. Gallo Builders, Inc. sometimes are referred to herein collectively as "Defendants" and Arboretum Village, LLC, Gallo Builders, Inc. and R.H. Gallo Builders, Inc. sometimes are referred to herein collectively as "Company Defendants";

WHEREAS, the Plaintiff and the Defendants are sometimes referred to herein collectively as the "Parties" and each separately as a "Party";

WHEREAS, construction developments that disturb a certain number of acres of land, and that discharge stormwater from a point source to waters of the United States, are required under the Federal Water Pollution Control Act, 33 U.S.C. § 1251 et seq. (the "Clean Water Act," or the "CWA"), to obtain and adhere to the terms of a National Pollutant Discharge Elimination System ("NPDES") Permit issued by the United States Environmental Protection Agency ("EPA")—specifically, the General Permit for Discharges from Construction Activities ("Construction General Permit," or "CGP"). *See* 33 U.S.C. §§ 1311(a), 1342(a), 1342(p), 1362; 40 C.F.R. §§ 122.26(b)(14)(x), 122.26(b)(15)(i), 122.26(c)(1), 122.28; 87 Fed. Reg. 3552 (January 24, 2022);





ab
SAG

WHEREAS, the CGP[1] imposes various requirements on construction developments that are intended to reduce the discharge of polluted stormwater, including sediment-laden stormwater, to Waters of the United States; and among these requirements is that each construction site operator[2] ("Operator") obtain CGP coverage and adhere to the requirements of the CGP;

WHEREAS, under 33 U.S.C. § 1365, the CWA's "Citizen Suit" provision, any person adversely affected by another's violation of the CWA—including a failure to obtain a required NPDES permit, or a failure to adhere to a condition thereof—may, after 60 days of notice, file suit to enjoin such violation, and to impose civil penalties on the violator; and whereas a plaintiff who substantially prevails in such suit may be awarded costs of litigation, including attorney and expert witness fees. *See* 33 U.S.C. §§ 1365(a), 1365(b), 1365(d), 1365(f), 1365(g), 1319(d);

WHEREAS, by letter mailed on March 4, 2016, Plaintiff notified Arboretum Village LLC, Gallo Builders, Inc., Robert H. Gallo and Steven A. Gallo of its intention to file suit on grounds of their alleged violations of the CWA (and later was deemed to have notified R.H. Gallo Builders, Inc., constructively, of the same)—specifically, the failure of Gallo Builders, Inc. to obtain CGP coverage, and the Company Defendants' failure to adhere to numerous requirements of the CGP, which Plaintiff alleged were resulting in discharges of sediment-laden stormwater from the Site to a wetland and stream that are tributaries to the Blackstone River;

WHEREAS, on May 6, 2016, Plaintiff filed suit in the United States District Court for the District of Massachusetts, Central Division, Civil Action No. 4:16-cv-40053-MRG (hereafter

---

[1] References herein to the "Construction General Permit" and "CGP" are to the 2012 version of the CGP. *See* n.3, *infra*.

[2] As that term is defined in the CGP.





RM
SAG

sometimes referred to herein as the "Action"), alleging the aforementioned violations of the CWA, requesting an injunction against further such violations, requesting an imposition of civil penalties, and requesting its attorneys' fees, expert fees, and costs;

WHEREAS, the Action proceeded to a jury trial on the issue of liability, which occurred between December 1, 2025 and December 19, 2025;

WHEREAS, the jury found that defendants R.H. Gallo Builders, Inc. and Gallo Builders, Inc. had at various times since 2012 violated the CWA by operating the Site as Operators without CGP coverage—and further, found that defendants Robert H. Gallo and Steven A. Gallo were Responsible Corporate Officers of such entities;

WHEREAS, the jury found that each of the Company Defendants had at various times since 2013 violated the CWA by violating 16 different conditions of the CGP at the Site, including provisions requiring the training and deployment of qualified personnel, and requiring the effective design, installation, maintenance, and inspection of stormwater management and erosion and sediment control systems—and further, found that defendants Robert H. Gallo and Steven A. Gallo were Responsible Corporate Officers of such Company Defendants;

WHEREAS, upon the jury's verdict, the Court scheduled a second phase of trial to address the issue of remedies for Defendants' CWA violations;

WHEREAS, the Defendants continue to deny any liability to the Plaintiff, continue to deny that any monies and/or equitable relief are due to the Plaintiff or any other entity and assert that, but for this herein Consent Decree, an appeal would have been filed;

WHEREAS, the Parties have decided that it is in their best interest to resolve this litigation by a settlement and compromise rather than proceed to the second phase of trial;

WHEREAS, pursuant to 33 U.S.C. § 1365(c)(3) and 40 C.F.R. § 135.5, parties who wish to settle a CWA citizen suit must lodge a proposed Consent Decree with the Court, and simultaneously submit such proposed Consent Decree to the United States Department of Justice ("DOJ") and EPA for their review;

WHEREAS, pursuant to 33 U.S.C. § 1365(c)(3) and 40 C.F.R. § 135.5(b), the DOJ and EPA have a period of 45 days from the time of their receipt of a proposed Consent Decree to submit any comments to the Court. After such period, or earlier once it has received comments from the United States, this Court may enter this proposed Consent Decree;

WHEREAS, on the day that this proposed Consent Decree is filed with this Court, Plaintiff's counsel will send a copy of this proposed Consent Decree by certified mail to the DOJ and EPA for their review;

WHEREAS, the Parties have agreed that this Consent Decree is executed by them, and is proposed for entry by the Court, upon the condition that this Court does not require any changes to the terms hereof or impose any further monetary or injunctive relief upon the Defendants;

WHEREAS, the Parties have agreed that, if the Court declines to approve this Consent Decree, or any part hereof, the Parties will work together to modify the Consent Decree within 30 days to endeavor to make it acceptable to the Court, so long as that can be done consistent with each Party's intent in entering into the Consent Decree;

WHEREAS, the Parties have agreed that, if the Court declines to approve this Consent Decree, or any part hereof, and the Parties despite their good faith efforts cannot agree upon modifications to the Consent Decree that make it acceptable to themselves and the Court, the Parties' consent as expressed hereunder shall be ineffective;



WAT
5 AG

NOW, THEREFORE, IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES, AND ORDERED AND DECREED BY THE COURT, AS FOLLOWS:

## I. INJUNCTIVE RELIEF

**A. Compliance with the CWA and CGP.** For the term of this Consent Decree, and subject to the terms below, Arboretum Village, LLC and R.H. Gallo Builders, Inc.—and any other Operator of the Site in which Robert H. Gallo or Steven A. Gallo, or any of their children or spouses, has any legal or beneficial interest (hereinafter, "Affiliated Operator")—shall operate the Site in compliance with the applicable requirements of the CWA and the CGP, unless and until (1) the language of the CWA or the CGP changes in such fashion as to eliminate their application to the Site, or (2) the CGP's applicability to the Site has been properly terminated in accordance with Part 8 of the CGP. If at any point during the term of this Consent Decree, Defendants believe in good faith that the provisions of the CWA or CGP have changed in such fashion as to eliminate their application to the Site, Defendants may petition this Court for an order modifying or terminating this Section I of the Consent Decree, which petition Plaintiff may oppose.

**B. CGP Requirements.** The applicable requirements of the CGP include, but are not limited to, each of the 16 specific CGP provisions[3] that the Company Defendants were found by the jury to have violated, namely:

[3] As previously noted (n.1 *supra*), references herein to the "CGP" are to the 2012 version of the CGP. The reason for this is that the 2012 CGP was used, by agreement of the Parties, as the operative CGP for all of the Company Defendants' alleged violations at the jury trial. While the numbering of the relevant CGP provisions has changed in later (2017 and 2022) versions of the CGP, the same provisions exist in those later versions. Likewise, in the next version of the CGP, which will likely be published in 2027, the numbering of the provisions may change. The Parties understand and agree that regardless of any changes in numbering, to the degree that the same 16 substantive provisions exist in the next version of the CGP, the Company Defendants and any Affiliated Operators are ordered by this Decree to adhere to them. And to the extent that the





pm
5 A 5

1. Part 2.1.1.2 of the CGP, according to which a site Operator must take into account the following factors in designing their stormwater controls: (i) the expected amount, frequency, intensity, and duration of precipitation at a site, and (ii) the nature of stormwater runoff at a site, including factors such as expected flow from impervious surfaces, slopes, and site drainage features.

2. Part 2.1.1.3(b) of the CGP, according to which a site Operator must use good engineering practices in installing stormwater controls at a site.

3. Part 2.1.1.4(a) of the CGP, according to which a site Operator must ensure that all erosion and sediment controls at a site remain in effective operating condition, and are protected from activities that would reduce their effectiveness.

4. Parts 2.1.1.4(b) and 2.3.2 of the CGP, according to which a site Operator must timely repair or modify their erosion and sediment controls upon finding that any such controls require repair, replacement, or maintenance. In order to be considered timely, if the necessary repair, replacement, or maintenance is not significant, work must be initiated immediately upon discovery of the problem and completed by the end of the next work day. If the necessary repair, replacement, or maintenance is significant, it must be completed within seven days of the discovery of the problem, unless it is infeasible to complete the repair, replacement, or maintenance within seven days. If it is infeasible, the reason for this infeasibility must be documented, as must the planned schedule for completing the repair, replacement, or problem.

5. Part 2.1.2.2(a) of the CGP, according to which a site Operator must install sediment controls along those perimeter areas of a site that will receive stormwater from earth-disturbing activities.

6. Part 2.3 of the CGP, according to which a site Operator must design, install, and maintain effective pollution prevention measures in order to prevent the discharge of pollutants from a site.

7. Part 4.1.1 of the CGP, according to which a site Operator must have a qualified person inspect their erosion and sediment controls. A "qualified person" is a person knowledgeable in the principles and practice of erosion and sediment controls and pollution prevention, who possesses the skills to assess conditions at the construction site that could impact stormwater quality, and the skills to assess the effectiveness of any

---

same 16 substantive provisions do not exist in subsequent versions of the CGP, the Company Defendants and any Affiliated Operators are not ordered by this Decree to adhere to such provisions.



EW
5/15

stormwater controls selected and installed to meet the requirements of this permit.

8. Part 4.1.2 of the CGP, according to which a site Operator must inspect a site's erosion and sediment controls every 7 days (or alternatively, every 14 days, and within 24 hours of every day on which .25 inches or more of rain falls).

9. Part 4.1.5.2 of the CGP, according to which a site Operator must, during site inspections, inspect all stormwater controls and pollution prevention measures at a site.

10. Part 4.1.5.4 of the CGP, according to which a site Operator must, during site inspections, inspect all areas where stormwater typically flows within a site.

11. Part 4.1.6.1 of the CGP, according to which a site Operator must, during site inspections, check whether all erosion and sediment controls and pollution prevention measures at a site are installed, appear to be operational, and are working as intended to minimize pollutant discharges.

12. Part 4.1.6.7 of the CGP, according to which a site Operator must, after site inspections, initiate corrective action when failures of erosion and sediment control have been observed.

13. Part 4.1.7 of the CGP, according to which a site Operator must complete site inspection reports within 24 hours of completing a site inspection.

14. Part 4.1.7.3 of the CGP, according to which a site Operator must keep all of their site inspection reports on site or at an easily accessible location.

15. Part 5.2 of the CGP, according to which a site Operator must immediately take all reasonable steps to minimize or prevent the discharge of sediment from a site, upon discovering that sediment is being discharged.

16. Part 6 of the CGP, according to which a site Operator must train site personnel in the design, installation, inspection, maintenance, and/or repair of stormwater controls.

C. **<u>Quarterly Document Disclosures</u>**. For the term of this Consent Decree, every 3 months beginning in the month after the month when the Consent Decree is entered, Defendants shall, within 7 days of the first day of each applicable month, provide Plaintiff's counsel with the



SAG

following documents by emailing them to both jvandersalm@vandersalmlaw.com and rudolf@rudolfsmith.com:

1. All site inspection reports for the prior 3 months of site inspections at the Site;

2. All corrective action reports generated at the Site during the prior 3 months, as required by Part 5.4 of the CGP;

3. The updated Stormwater Pollution Prevention Plan ("SWPPP") for the Site, including all attachments and addenda thereto;

**D.** **Staff Training**. For the term of this Consent Decree, Defendants shall ensure that all members of the Stormwater Team at the Site, as defined by Part 7.2.1 of the CGP, take the United States Environmental Protection Agency's online Construction Inspection Training Course, which is available at https://www.epa.gov/npdes/construction-inspection-training-course. Each member of the Site's Stormwater Team shall watch all 5 modules of this course, and shall pass the Final Exam for the course, before conducting any work at the Site that relates to the requirements of this Consent Decree. A Certificate of Completion of the course for each member of the Site's Stormwater Team shall be emailed to Plaintiff's counsel within 7 days of the member's completion of the course, at jvandersalm@vandersalmlaw.com and rudolf@rudolfsmith.com.

**E.** **Compliance Monitoring**. For the term of this Consent Decree, 3 times per year, with each year defined as beginning on the date when this Consent Decree is entered, and ending on the day before that date in the subsequent calendar year, Defendants shall allow Plaintiff—including its attorney, its consultant, and another of its representatives—to visit and inspect the Site for the purpose of confirming compliance with this Consent Decree. Such visits may occur at any time between the hours of 9:00 a.m. and 5:00 p.m., Monday through Friday, provided that Plaintiff provides 24 hours of advance notice of each such visit to Defendants, and that such



SAS

notice will be provided only from Monday through Friday between the hours of 9:00 a.m. and 5:00 p.m.. Such notice shall be provided by email from Plaintiff's counsel James P. Vander Salm or Benjamin C. Rudolf to Defendants' counsel William D. Jalkut (wjalkut@fletchertilton.com) and Elisabeth A. Finn (efinn@fletchertilton.com). No confirmation or reply to such notice shall be required in order for Plaintiff's representatives to visit and inspect the site. Defendants may change the identities and email addresses of those designated to receive such notice by emails sent to both Attorney Vander Salm and Attorney Rudolf at the email addresses set forth above; provided, that such change shall not become effective until 72 hours after it has been announced.

## II. PAYMENTS

A. **Supplemental Environmental Projects**. Within 30 days of this Court's entry of this Consent Decree, Defendants collectively shall make the following payments anticipated to fund environmentally beneficial projects within the Blackstone River headwaters:

1. Defendants collectively shall make a total payment of $500,000.00 (five hundred thousand dollars) to Massachusetts Audubon Society, Inc. ("Mass Audubon") for two projects with Worcester Public Schools students focused on Blackstone River watershed health and stormwater pollution prevention. Mass Audubon is a nonprofit organization dedicated to preserving and protecting the natural environment of Massachusetts. It is headquartered at 208 South Great Road, Lincoln, Massachusetts, 01773.

2. Defendants collectively shall make a total payment of $50,000.00 (fifty thousand dollars) to The Worcester State Foundation to enable the purchase of water quality monitoring equipment for use in Worcester State

JPV
(Substituted page 10, with authorization by Defendants)

University's Tatnuck Brook water monitoring initiative, part of its Central Massachusetts Watershed Project. Tatnuck Brook is a headwater tributary of the Blackstone River in Worcester, located approximately 4 miles from the Site. The Worcester State Foundation is the nonprofit fundraising arm of Worcester State University. It is headquartered at 486 Chandler Street, Worcester, MA, 01602.

The above payments shall be made by wire transfer. Upon the entry of the Consent Decree, the wiring information for such transfers shall be provided by Attorney Vander Salm to Defendants' counsel (at both wjalkut@fletchertilton.com and efinn@fletchertilton.com). Evidence of the completed transfers shall be provided by Defendants' counsel to Plaintiff's counsel (at both jvandersalm@vandersalmlaw.com and rudolf@rudolfsmith.com).

**B.** **Costs and Fees**. Within 30 days of this Court's entry of this Consent Decree, Defendants collectively shall pay the total sum of $1,575,000.00 (one million five hundred seventy-five thousand dollars) to defray Plaintiff's costs, expert fees, and attorneys' fees incurred in connection with this Action up to the date of the entry of the Consent Decree. This payment shall be made by wire transfer to the IOLTA account of the Law Office of James P. Vander Salm. The wiring information for such transfer shall be provided by Attorney Vander Salm to Defendants' counsel (at both wjalkut@fletchertilton.com and efinn@fletchertilton.com) upon the entry of the Consent Decree. Defendants, by agreeing to this sum, make no representations as to the actual value of Plaintiff's costs and fees related to the Action, and reserve the right to contest such value in the event that this Consent Decree is not entered. Plaintiff, by agreeing to this sum, makes no representation that the actual value of its costs and fees related to this Action is not

SAG

greater than this sum, and reserves the right to seek a higher amount in the event that this Consent Decree is not entered.

C. **Monitoring Fund.** Within 30 days of this Court's entry of this Consent Decree, Defendants collectively shall pay the total sum of $75,000.00 (seventy-five thousand dollars) to be used to defray Plaintiff's costs in monitoring and (if necessary) enforcing Defendants' compliance with this Consent Decree. This payment shall be made by wire transfer to the IOLTA account of the Law Office of James P. Vander Salm. This Monitoring Fund shall remain in such IOLTA account, and may be drawn upon to pay any costs or fees, including attorney and expert fees, associated with Plaintiff's monitoring or enforcement of the Consent Decree. At the expiration of the term of the Consent Decree, any remaining money in the Monitoring Fund shall be returned, within 30 days, to Defendants through their counsel. Once annually, at the end of each year of the term of the Consent Decree, Defendants shall have the right to an accounting of any monies expended from the Monitoring Fund during the prior year. Defendants shall exercise such right by communicating through their counsel to Plaintiff's counsel, at jvandersalm@vandersalmlaw.com and rudolf@rudolfsmith.com. Nothing in this paragraph or in this Consent Decree shall restrict Plaintiff's right to seek compensation from this Court for fees or costs that it incurs to enforce the terms of this Consent Decree once the Monitoring Fund has been exhausted, and nothing herein shall be construed as a waiver of Defendants' rights to contest and defend against any such action.

D. **Joint and Several Liability.** The five Defendants shall be jointly and severally liable for each of the payments set forth above.

## III. COVENANT NOT TO SUE AND MUTUAL RELEASE

RV
SAC

A. **Plaintiff**. Upon entry of this Consent Decree by the Court, Plaintiff, on its own behalf and on behalf of its members, subsidiaries, successors, assigns, directors, officers, agents, attorneys, representatives, and employees, covenants not to sue and hereby releases Defendants (and their shareholders, partners, directors, officers, managers, employees, subsidiaries, agents, attorneys, representatives, consultants, predecessors, successors, and assigns) and waives forever all claims and rights of appeal, whether known or unknown, for damages, penalties, fines, sanctions, injunctive relief, mitigation, fees (including fees of attorneys, experts, and others), costs, expenses or any other claim, relief, or sum incurred or claimed or which could have been claimed in this Action, including, without limitation, any claims related to the failure of Defendants to comply with the Clean Water Act at the Site, up to the date on which this Consent Decree is executed by the Parties.

B. **Defendants.** Upon entry of this Consent Decree by the Court, Defendants, on their own behalf and on behalf of their shareholders, partners, directors, officers, managers, members, employees, subsidiaries, agents, attorneys, representatives, consultants, successors and assigns, release Plaintiff (and its members, subsidiaries, successors, assigns, directors, officers, agents, attorneys, representatives, consultants, and employees) from, and waive all claims, defenses, and rights to appeal, whether known or unknown, including, without limitation, any which arise from or pertain to this Action, including all claims for fees (including fees of attorneys, experts, and others), costs, expenses or any other sum incurred or claimed or which could have been claimed for matters associated with or related to this Action, up to the date on which this Consent Decree is executed by the Parties.

C. **No Release as to Consent Decree.** Notwithstanding subsections A and B above, nothing in this Consent Decree shall constitute a release or waiver of any claim by any of the

Parties to enforce any terms of this Consent Decree and/or any rights to seek judicial interpretation of any terms of this Consent Decree.

## IV. MISCELLANEOUS PROVISIONS

A. **Effective Date**. The Effective Date of this Consent Decree shall be the date it is approved and entered by the Court.

B. **Term of Consent Decree.** This Consent Decree shall expire and be of no further force or impact upon the earlier of;

1. the expiration of 3 years from the Effective Date as defined above, or
2. the point in time at which both (a) the payments set forth above in Section II(A) ("Supplemental Environmental Projects") and Section II(B) ("Costs and Fees") have been received, and (b) Defendants have filed an affidavit with the Court in which they certify that none of the Defendants, their spouses or their children possess any legal or beneficial interest in any real property at the Site.

C. **Successors and Assigns**. This Consent Decree shall be binding on the Parties and on their successors and assigns. Notwithstanding the previous sentence, the Parties hereby agree as follows:

1. Subject to the terms below, a bona fide purchaser for value of a single residential unit and/or lot is not deemed to be a "successor" and/or an "assign" and no part of this Consent Decree shall be deemed to bind any such buyer and/or to burden the title passed to such buyer.
2. Subject to the terms below, a bona fide purchaser for value of two or more residential units and/or lots as part of a single transaction is not deemed to



mn
SAF

be a "successor" and or an "assign" and no part of this Consent Decree shall be deemed to bind any such buyer and/or to burden the title passed to such buyer.

3. Any buyer in which Robert H. Gallo, Steven A. Gallo, their spouses or their children possess any legal or beneficial interest shall not be considered a bona fide purchaser for value absent a written approval by an authorized representative of the Plaintiff.

4. In the event of a sale to a bona fide purchaser for value pursuant to subsection (1) above, Defendants shall provide to Plaintiff's counsel an affidavit in which they (a) specify the terms of the sale, and (b) affirm that none of Robert H. Gallo, Steven A. Gallo, their spouses or their children possess any legal or beneficial interest in the buyer.

5. In the event of a sale to a bona fide purchaser for value pursuant to subsection (2) above, the buyer shall provide to Plaintiff's counsel an affidavit in which it both (a) specifies the terms of the sale, and (b) affirms that none of Robert H. Gallo, Steven A. Gallo, their spouses or their children possess any legal or beneficial interest in the buyer.

**D.** **Execution in Counterparts**. This Consent Decree may be executed in one or more counterparts which, taken together, shall be deemed to constitute one and the same document.

**E.** **Construction of Language**. The language in all parts of this Consent Decree, unless otherwise stated, shall be construed according to its plain and ordinary meaning.

RM
SAG

F. **Entire Agreement**. All agreements, covenants, representations and warranties, express or implied, oral or written, of the Parties concerning the subject matter of this Consent Decree are contained herein.

G. **Enforceability**. In the event that any of the provisions of this Consent Decree are held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected unless the material purpose of the provisions taken as a whole cannot be accomplished consistent with the parties' intentions.

H. **Notices**. Unless otherwise specified above, any notices or documents relating to this Consent Decree shall be emailed by Defendants to Plaintiff through its attorneys James P. Vander Salm (jvandersalm@vandersalmlaw.com) and Benjamin C. Rudolf (rudolf@rudolfsmith.com), and by Plaintiff to Defendants through their attorneys William D. Jalkut (wjalkut@fletchertilton.com) and Elisabeth A. Finn (efinn@fletchertilton.com). Each Party shall have the right to change the identity and email address of its designee and shall notify the opposing Party of any change to its contact information within 14 days of such change; provided, however, that any such change shall only become effective at the time of notification, and that any notices or documents transmitted prior to the time of notification, using the receiving Party's prior contact information, shall be deemed effectively transmitted.

I. **Facsimiles**. Signatures of the parties transmitted by facsimile or email are binding.

J. **Final Judgment and Order; Retention of Jurisdiction**. The Parties submit this Consent Decree to the Court for its approval and entry as a Final Judgment and Order. The Court's entry of this Consent Decree shall have the effect of dismissing this Action. This Court shall retain jurisdiction to enforce the terms of this Consent Decree.





BAM
SAG

K. **<u>Gallo Builders, Inc.</u>** Notwithstanding any language to the contrary set forth herein, nothing in this Consent Decree shall be construed to mean that Gallo Builders, Inc. has been revived as a corporation or still exists as a corporation.

L. **<u>"Whereas" Clauses</u>**. The Parties agree that the "Whereas" clauses in this Consent Decree are incorporated as substantive terms of the Consent Decree; provided, however, that no Party shall be taken hereby to adopt or agree with an opposing Party's opinion of the merit of any claim or defense in this Action.

**(This space intentionally left blank)**



SN
546

The undersigned Parties have agreed to this Consent Decree as designated on their respective signature blocks below. Each Party and the individual signing the Consent Decree represent and warrant that the individual signing the Consent Decree has been duly authorized to enter into this Consent Decree, and to bind the Party on whose behalf such individual is signing. The undersigned have read, understood and agreed to all of the terms and conditions of this Consent Decree.

THE BLACKSTONE HEADWATERS COALITION, INC.

By: X John Reed
Name: John Reed
Title: President
Date: X Feb, 17 2026

GALLO BUILDERS, INC.

By: ______________________
Name:
Title:
Date:

R.H. GALLO BUILDERS, INC.

By: ______________________
Name:
Title:
Date:

ARBORETUM VILLAGE, LLC

By: ______________________
Name:
Title:
Date:

The undersigned Parties have agreed to this Consent Decree as designated on their respective signature blocks below. Each Party and the individual signing the Consent Decree represent and warrant that the individual signing the Consent Decree has been duly authorized to enter into this Consent Decree, and to bind the Party on whose behalf such individual is signing. The undersigned have read, understood and agreed to all of the terms and conditions of this Consent Decree.

THE BLACKSTONE HEADWATERS COALITION, INC.

By: ________________________
Name: John Reed
Title: President
Date:

GALLO BUILDERS, INC.

By: Steven A. Gallo, PRES.
Name: STEVEN A. GALLO, PRES
Title: PRESIDENT
Date: 2/17/26

R.H. GALLO BUILDERS, INC.

By: [signature] Pres
Name: RH GALLO
Title: President, Pres
Date: 2/18/26

ARBORETUM VILLAGE, LLC

By: [signature] Pres
Name: RH GALLO
Title: Mgr
Date: 2/18/26



4906-1813-3901, v. 1

ROBERT H. GALLO

Date: 2/18/26

STEVEN A. GALLO

Date: 2/13/26

---

Approved:

United States District Court Judge
Date: 5/11/26